Bertha Mae WILKES and Tom W. Wilkes, as next friends of their minor grandchildren; Geraldine Yellow, on behalf of herself and as next friend of her minor child and minor grandchild, Plaintiffs,

v.

Natalie Haas STEFFEN, in her official capacity as Commissioner of the Minnesota Department of Human Services, Defendant.

Civ. No. 4–93–205.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 25, 1993.

Tonja M. Orr, Monica M. Burczek, Legal Aid Soc., Laurie N. Davison, Mid–Minnesota Legal Assistance, Minneapolis, MN, for plaintiffs.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Laurasue Schlatter, Asst. Atty. Gen., St. Paul, MN, for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

### FACTS AND STATUTORY BACK-GROUND

Plaintiffs are the caretakers of children who receive Aid to Families With Dependent Children (AFDC); in this action plaintiffs challenge a Minnesota rule governing AFDC payments. AFDC is a cooperative state-federal assistance program created to enable states to provide financial assistance to "needy dependent children and the parents or relatives with whom they are living." 42 U.S.C. § 601. A state that chooses to participate in the program must administer it in accordance with a plan that complies with federal requirements and is approved by the Department of Health and Human Services (HHS). *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968); *Gorrie v. Bowen*, 809 F.2d 508, 511 (8th Cir.1987). The federal government reimburses the state for a portion of the funding for the program. *Gorrie*, 809 F.2d at 508.

AFDC payments are available for children who have been deprived of parental support, are living with certain specified relatives, and meet certain age requirements. 42 U.S.C. § 606(a). If these prerequisites are met, AFDC payments are provided to children, and in some cases to their caretaker relatives, whose income and resources fall below the state-established standard of assistance.

*Morrison v. Heckler*, 602 F.Supp. 1485, 1486 (D.Minn.1985), *aff'd*, 787 F.2d 1285 (8th Cir. 1986). Grants are made to eligible households or "assistance units." An assistance unit is defined as "the group of individuals whose income, resources and needs are considered as a unit for purposes of determining eligibility and the amount of payment." 45 C.F.R. § 206.10(b)(5).

Federal law provides that states must, in determining need, take into consideration the resources of a dependent child or caretaker relative claiming AFDC. 42 U.S.C. § 602(a)(7)(A). Federal law also dictates who must be considered part of an assistance unit. In the Deficit Reduction Act of 1984 (DEFRA), Congress amended 42 U.S.C. § 602(a) to provide that an assistance unit must contain the dependent child, any parent of the child living in the household, and any siblings of the child living in the household.[1] 42 U.S.C. § 602(a)(38). A caretaker relative other than a parent is not required to be part of a child's assistance unit.

Federal law also provides that, in some circumstances, income of individuals outside the assistance unit must be considered in determining the needs of the assistance unit; income of stepparents or grandparents is in some cases deemed to be available to members of the assistance unit. 42 U.S.C. § 602(a)(31), (39). Outside of these provisions, however, the needs and resources of the assistance unit must generally be determined solely on the basis of income that is actually available to the dependent children in the household. *See generally, Heckler v. Turner*, 470 U.S. 184, 199, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985).

As the administering agent of the AFDC program, states have considerable latitude in allocating AFDC resources; each state is allowed to set its own standard of need and to determine the level of benefits available. *New York State Department of Social Ser-*

---

1. Prior to the enactment of the DEFRA, AFDC applicants could control the composition of their assistance units by excluding from the unit family members who had independent sources of income. *Bowen v. Gilliard*, 483 U.S. 587, 589, 107 S.Ct. 3008, 3011, 97 L.Ed.2d 485 (1987). Thus, for example, if one of the children in the household received support payments from an absent parent, she could be excluded from the AFDC unit in order to avoid disqualifying the rest of the family from benefits or reducing its level of benefits. *Id.* The DEFRA amendment eliminated this option.

*vices v. Dublino,* 413 U.S. 405, 414, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973). Minnesota has, in accordance with the federal statutory scheme, promulgated administrative rules for its AFDC program. The plaintiffs in this action challenge Minnesota's rules regarding the composition of assistance units. Minnesota's assistance unit policy is set forth in Minn. Rule 9500.2440, subparts 2, 3. Subpart 2 of the rule prescribes the composition of an AFDC "filing unit." The rule provides:

> When an application for assistance is made for a dependent child, that child and all blood related and adoptive minor siblings of that child, including half-siblings, along with the parents of that child who live together, must be considered a single filing unit.

Minn. Rule 9500.2440, subp. 2. Minnesota's filing unit is the same as the mandatory assistance unit of 42 U.S.C. § 602(a)(38). The Minnesota rules go on to require that certain filing units be combined into a larger assistance unit. Subpart 3 of Rule 9500.2440 provides:

> Eligible members of a filing unit who are required by federal law to apply for AFDC must be included in a single assistance unit. *Members of separate filing units who live together must be included in a single assistance unit when:*
>
> A. one caretaker makes application for separate filing units; and
>
> B. two caretakers, who are currently married to each other, make application for separate filing units.

Minn. Rules. 9500.2440, subp. 3 (emphasis added).

The effect of consolidating filing units under this rule is illustrated by the facts underlying this action. Plaintiffs Bertha Mae Wilkes and Tom W. Wilkes care for ten grandchildren in their home. Four of the grandchildren are the children of Mrs. Wilkes' adult daughter, Patty, who does not reside in the Wilkes household and is unable to care for her children. The other six grandchildren are the children of Mrs. Wilkes' deceased daughter, Angie. Prior to her death, Angie resided in the Wilkes household and cared for all ten grandchildren.

Angie and her six children were considered a separate assistance unit under Minnesota's assistance unit composition rule, and received an AFDC grant of $850 per month. Patty's four children were also considered a separate assistance unit; Mr. and Mrs. Wilkes received an AFDC payment of $495 per month on their behalf.[2] Angie's AFDC grant was terminated upon her death, and on September 1, 1992, Mrs. Wilkes applied for AFDC on behalf of Angie's six children. The defendant Commissioner of the Minnesota Department of Human Services (Commissioner) determined that because Bertha Mae Wilkes was the caretaker relative for both Patty's children and Angie's children, the household consisted of one assistance unit of ten AFDC recipients.

Minnesota makes AFDC payments according to an established "standard of assistance." The standard increases by progressively smaller amounts as the number of children in the household increases. Minn. Rule 9500.2440. For example, although the standard of need for one child is $250, the standard of need for two children does not double, but increases by $95. As an assistance unit of ten, the Wilkes grandchildren are entitled to an AFDC payment of $902 per month.[3] The Wilkes plaintiffs contend that their grandchildren should not be included in a single assistance unit of ten, but should be considered two separate assistance units, one consisting of Patty's four children and the other consisting of Angie's six children. Under the Minnesota rules, an assistance unit of four would receive an AFDC payment of $510 per month, while an assistance unit of six would receive an AFDC payment of $663

---

2. Mr. and Mrs. Wilkes do not receive AFDC payments for themselves. Mr. Wilkes is disabled and receives payments from the Social Security Administration. Prior to Angie's death, Mrs. Wilkes was employed full time; after Angie's death, however, Mrs. Wilkes had to quit her job in order to care for her grandchildren.

3. The Wilkes grandchildren currently receive $837 per month; their grant has been reduced by $15 per month in order to recoup a previous overpayment. Plaintiffs do not challenge the $15 reduction in this action.

per month. Minn. Rule 9500.2440, subp. 6. Thus, if the Wilkes household were considered to include two assistance units instead of one, the Wilkes grandchildren would receive total AFDC payments of $1,173 per month, $271 a month more than they receive as a single assistance unit of ten.

The other plaintiff in this action, Geraldine Yellow, cares for her minor daughter and her minor grandchild, who is the son of a daughter not residing in the Yellow household. Because Mrs. Yellow is the caretaker relative for both her daughter and her grandchild, the Commissioner determined that the Yellow household contained a single assistance unit of three, and allowed the household a monthly AFDC payment of $532. In August 1992, Mrs. Yellow and her daughter received more than $5,000 in retroactive social security benefits, because of the disability of Mrs. Yellow's husband, who does not reside in Mrs. Yellow's household. The receipt of the retroactive social security benefits made the household ineligible for AFDC; the children are now receiving state-funded family general assistance (FGA).

In addition, Mrs. Yellow has herself been determined to be disabled, and she now receives payments from the Social Security Administration on her own behalf. Because of those payments, Mrs. Yellow is now disqualified from receiving either AFDC or FGA payments; however, the two children in the household continue to receive FGA as an assistance unit of two, with Mrs. Yellow as their caretaker. Although the record is not entirely clear on this point, it appears that the Yellow children will again be eligible for AFDC in the near future. Under Minnesota's assistance unit composition rule, the Yellow household will contain a single assistance unit of two, rather than two assistance units of one. As is the case for the Wilkes family, a determination that the Yellow household contains two assistance units rather than one would result in higher total payments to the household.

Mrs. Wilkes filed a timely administrative appeal of the agency's determination that her household consists of a single assistance unit. The appeal has been stayed pending a determination of the legal issues presented in this action. The parties dispute whether Mrs. Yellow filed an administrative appeal regarding her household's AFDC benefits. The commissioner asserts, however, that even if Mrs. Yellow had filed such an appeal, the commissioner would have made the same determination regarding the benefits. Therefore, the parties agree that any further exhaustion of administrative remedies by Mrs. Yellow would be futile.

Plaintiffs now move for summary judgment, seeking a declaration that Minnesota's assistance unit composition rule conflicts with federal regulations governing the AFDC program and is therefore invalid. They ask the Court to issue a permanent injunction preventing the defendant from enforcing its rule. Defendant opposes the summary judgment motion, asserting that summary judgment should in fact be entered in favor of the state.

## DISCUSSION

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is

a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Plaintiffs' motion for summary judgment is based upon the supremacy clause of the United States Constitution. States are not required to participate in the AFDC program. Those who choose to participate, however, are required to administer their programs in compliance with federal law. *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968). Where a state AFDC regulation conflicts with a federal statute or regulation, the supremacy clause dictates that the federal requirements control. *Gorrie v. Bowen*, 809 F.2d 508, 511 (8th Cir.1987) (citations omitted). Plaintiffs assert that Minnesota's assistance unit composition rule is invalid because it conflicts with federal regulations prohibiting states from assuming that the income of non-legally responsible individuals is available to dependent children.[4]

The principle of actual availability prevents states from artificially depreciating an AFDC recipient's need by imputing financial support from persons who have no obligation to furnish it. *Heckler v. Turner*, 470 U.S. 184, 199, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985). In accordance with this principle, the United States Supreme Court has on numerous occasions struck down state regulations that based AFDC grants upon the income of individuals who were not legally responsible for the AFDC recipients. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (striking down regulation that terminated AFDC payments to children whose mothers cohabitated with men other than the children's fathers); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970) (striking down regulation that reduced AFDC grants based on the income of a non-adoptive stepparent or "man assuming the role of spouse"); *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975) (striking down regulation that reduced AFDC grants where a household included a non-paying lodger). In these cases, the Court held that the income of persons living in a child's household who were not legally responsible for the child could not be used to reduce an AFDC grant, absent some showing that the income of the non-legally responsible person was actually available to the AFDC recipient.

The availability principle has been codified in three sections of the federal regulations, each of which plaintiffs assert prohibits Minnesota's assistance unit composition rule. Section 233.20(a)(3)(ii)(D) requires state plans to

(ii) provide that in determining need and the amount of the assistance payment . . .:

. . . .

(D) income ... and resources available for current use shall be considered. To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D).

Section 233.20(a)(2)(viii) provides that in establishing a standard of assistance, a state plan must

[p]rovide that the money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individual; and the agency will not assume any contribu-

---

4. Plaintiffs also assert that the assistance unit composition rule violates 45 C.F.R. § 233.-10(a)(1), which prohibits states from establishing arbitrary or inequitable AFDC eligibility require-

ments. Because the Court concludes that the assistance unit composition rule violates availability regulations, it need not address the parties' inequitability arguments.

tion from such individual for the support of the assistance unit....

45 C.F.R. § 233.20(a)(2)(viii).[5]

Section 233.90(a)(1) requires state plans to provide that:

The determination whether a child has been deprived of parental support or care ... will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is married ... to the child's natural or adoptive parent and is legally obligated to support the child under State law.... Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State....

45 C.F.R. § 233.90(a)(1).

Plaintiffs assert that Minnesota's assistance unit composition rule violates the federal availability regulations by assuming that the income of one group of AFDC recipients is available to another group of non-sibling AFDC recipients residing in the same home. For example, plaintiffs assert that the amount of AFDC provided for the Wilkes grandchildren is based upon the assumption that Mr. and Mrs. Wilkes received more than enough AFDC for Patty's children, and that they will use excess money from that grant to help support Angie's children. Mrs. Wilkes has testified, however, that she had always used the entire $495 AFDC grant provided prior to Angie's death to support Patty's four children, and that there is no extra money available from this grant to help support Angie's children. Affidavit of Bertha Mae Wilkes ¶ 15. Similarly, plaintiffs assert that the amount of AFDC paid on behalf of the Yellow children is based on the assumption that Mrs. Yellow received more than enough AFDC to support her daughter, and would use the excess from that grant to support her grandson. But Mrs. Yellow has testified that she would need the entire state-established one-child grant to support her

daughter; if she received a one-child grant, there would be no excess from that grant available to help support her grandson. Affidavit of Geraldine Yellow ¶ 9.

Plaintiffs argue that the effect of Minnesota's assistance unit composition rule is to reduce the amount of the AFDC grant for Angie's six children and Mrs. Yellow's grandson based upon income that is not actually available to them, in violation of 45 C.F.R. § 233.20(a)(3)(ii)(D). They argue that the state is reducing the amount of AFDC paid to Angie's six children and Mrs. Yellow's grandson "solely because of the presence in the household of a non-legally responsible individual," in violation of 45 C.F.R. § 233.-20(a)(2)(viii). Finally, plaintiffs assert that the state is assuming that income is available to Angie's children and Mrs. Yellow's grandson because of "the inclusion in the family, or the presence in the home of ... any individual other than [a natural or adoptive parent or legally responsible stepparent]" in violation of 45 C.F.R. § 233.90(a)(1).

In support for their position, plaintiffs point out that courts in this circuit have not hesitated to strike down state AFDC regulations that improperly assumed that the income of non-legally responsible persons was available to dependent children. *Rosen v. Hursh*, 464 F.2d 731 (8th Cir.1972); *Nelson v. Likins*, 389 F.Supp. 1234 (D.Minn.1974), aff'd 510 F.2d 414 (8th Cir.1975); *Hoehle v. Likins*, 405 F.Supp. 1167 (D.Minn.1975), aff'd in relevant part, 538 F.2d 229 (8th Cir.1976). Plaintiffs concede that the facts of *Rosen*, *Nelson*, and *Hoehle* are distinguishable from the facts presented here, because those decisions involved attribution of income between AFDC recipients and non-AFDC recipients; by contrast, the case at bar involves income attribution between two groups of AFDC recipients.

Plaintiffs note, however, that the Ninth Circuit has relied upon the availability regulations to strike down a state AFDC regulation indistinguishable from the one at issue here. *Beaton v. Thompson*, 913 F.2d 701

---

5. Section 233.20(a)(2)(viii) also includes certain exceptions, which the parties agree are not rele-

vant here.

(9th Cir.1990). The issue in *Beaton* was the validity of a state regulation that required sibling and non-sibling AFDC recipients residing in the same household with a single caretaker relative or married relative couple to be consolidated into one assistance unit. The plaintiffs sought to enjoin enforcement of the state regulation, on the ground that it attributed the income of non-legally responsible relatives to needy children in violation of federal regulations. The defendant conceded that it could not attribute the income of non-legally responsible relatives to needy children under the federal availability regulations. It argued, however, that its regulation did not illegally impute income to needy children, but simply redefined "assistance unit."

The appellate court rejected this argument. The court based its holding upon a prior decision in which it had held that absent proof of actual contribution, a state may not presume that a non-legally responsible person is bearing part of a child's expenses. *Beaton*, 913 F.2d at 704 (citing *McCoog v. Hegstrom*, 690 F.2d 1280, 1286 (9th Cir.1982). The court noted that although the defendant attempted to identify its assistance unit composition rule as a mere redefinition of terms, it necessarily involved attributing income of non-legally responsible persons to dependent children: the regulation implicitly assumed that children who lived with non-legally responsible persons were sharing expenses with those persons. Because the state regulation reduced benefits based on the presence in the household of a non-legally responsible person and presumed that the non-legally responsible person was contributing to the needy children, the court held that the state regulation violated 45 C.F.R. §§ 233.-20(a)(2)(viii), 233.20(a)(3)(ii)(D), and 233.-90(a)(1).

Defendant does not dispute that under *Beaton*, Minnesota's assistance unit composition rule is invalid; defendant argues, however, that *Beaton* was wrongly decided and that the Court should therefore decline to follow it. Defendant's argument is based largely on the principle of deference to administrative agencies. Defendant asserts that HHS, the federal agency charged with administering the AFDC program, has not only recognized

that states have discretion to prescribe the composition of AFDC assistance units, but has endorsed the very rule that plaintiffs challenge here. Defendant contends that the Court must defer to HHS's determination that Minnesota's assistance unit composition rule comports with federal AFDC regulations.

In support of this position, defendant points first to Action Transmittal No. SSA–AT–86–1, which was issued by HHS's Office of Family Assistance in January 1986 to advise state agencies regarding the assistance unit composition requirements of the DEFRA amendments. As noted above, the DEFRA amended 42 U.S.C. § 602(a) to require a child's parents and siblings to be included in the child's AFDC assistance unit, if they resided in the same home as the child. The 1986 action transmittal states that where an individual is required to be in two or more assistance units living in the same household, the units must be consolidated. The transmittal goes on to state:

> Outside of this policy, it is up to the State to establish policy on the number of assistance units in the household, e.g., when an individual not related to a member of an assistance unit as a parent, brother or sister lives in the household and files for assistance.

Action Transmittal No. SSA–AT–86–1 at 4.

HHS reiterated its position on consolidating assistance units when it published the final rules implementing the DEFRA amendments. The preamble to the final rules sets out examples of various households and discusses how they should be treated for AFDC purposes. One of these examples states:

> A mother, her child, her second husband (who is disabled) and his child live in the same household. Neither parent has adopted the other parent's child or is viewed as a parent of the other parent's child under State law.... There may be two separate AFDC units—the mother and her child and the husband and his child. (In this situation, section 402(a)(38) does not require the consolidation of assistance units, although the State may choose to do so.)

Aid to Families with Dependent Children Benefit Reduction Act Final Rules, 57 Fed. Reg. 30,132, 30,136 (1992).

■ The 1986 action transmittal and the preamble to the final rules implementing the DEFRA amendments clearly support defendant's position that the state has some discretion under section 602(a) to prescribe the composition of AFDC assistance units. Moreover, as defendant points out, an agency's interpretation of a statute that it is entrusted to administer is entitled to great deference. *Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (citations omitted). However, plaintiffs do not argue that the state wholly lacks discretion to prescribe the composition of AFDC assistance units; rather, they argue that in doing so, the state must comply with the federal availability regulations. Neither the 1986 action transmittal nor the preamble to the final rules implementing the DEFRA amendments speaks to whether consolidating assistance units in the manner that the state has here runs afoul of the availability regulations.

Perhaps in recognition of that fact, defendant relies heavily upon a June 29, 1993 letter from Kay Willmoth, Assistant Regional Administrator for Family Security of the Region V Office of HHS (hereinafter the Willmoth letter). The Willmoth letter was written in response to an inquiry by the state agency, which set forth examples of households paralleling the Wilkes and Yellow households, and asked whether consolidation of assistance units in those households would violate the federal regulations. In the letter, Willmoth concludes that it would not. Defendant bases its contention that the federal agency has approved Minnesota's assistance unit composition rule solely upon the Willmoth letter.

Plaintiffs object to the introduction of the Willmoth letter, arguing that it is unsworn and therefore inadmissible under Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 603. In addition, plaintiffs argue that the letter does not represent the official position of the federal agency; they point out that H.H.S. regulations prohibit HHS employees from providing testimony or producing documents in litigation absent express authorization from the Assistant Secretary for Family Support. 45 C.F.R. §§ 2.2(5), 2.3. Because there is no indication that HHS approved the submission or content of the Willmoth letter, plaintiffs assert that the Court should give it little weight.

■ The Court finds that the Willmoth letter was properly made part of the record in this case, and therefore denies the plaintiffs' motion to strike the letter from the record. The Court agrees with plaintiffs, however, that the letter is entitled to little weight. Plaintiffs' assertion that the Willmoth letter does not comply with 45 C.F.R. §§ 2.2(5) and 2.3 appears to be correct. Moreover, the opinion of a regional employee of a federal agency is not a final agency interpretation, *Lile v. University of Iowa Hospitals and Clinics,* 886 F.2d 157, 161 n. 4 (8th Cir.1989), and is therefore not entitled to the deference typically given to official agency pronouncements. The circumstances surrounding the creation of the Willmoth letter also limit the deference it is owed. This action was filed in February 1993; the Willmoth letter was written in response to a June 18, 1993 inquiry by the state agency that focused on the application of the assistance unit composition rule to plaintiffs. It therefore appears that the Willmoth letter was obtained specifically for purposes of this litigation. A court need not defer to an agency's litigation position. *Brewster v. Sullivan,* 972 F.2d 898, 901 (8th Cir.1992).

■ Finally, the Court notes that the amount of deference owed to agency interpretations depends upon the validity of the reasoning supporting them. *General Electric Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). In the Court's view, the interpretation of the availability regulations set forth in the Willmoth letter is unreasonable, and is thus entitled to no deference. The position set forth in the Willmoth letter and urged by defendant here is that, for various reasons, the federal availability regulations are wholly inapplicable to Minnesota's assistance unit

composition rule. For the reasons set forth below, the Court finds this position to be without merit.

■ Relying on the Willmoth letter, defendant first argues that the availability regulations do not apply to the assistance unit composition rule, because the regulations deal solely with eligibility, need, amount of assistance, and deprivation of parental support, and do not address the composition of assistance units. However, the separation of assistance unit composition from issues such as eligibility, need, and amount of assistance is an artificial distinction that is not supported by the plain language of the federal regulations. The availability regulations do deal with issues such as eligibility, need, and amount of assistance. But the federal regulations define assistance unit as "the group of individuals whose income, resources and needs are considered as a unit for purposes of determining eligibility and the amount of payment." 45 C.F.R. § 206.10(b)(5).

Thus, as is evidenced by the facts in this action, by adjusting the assistance unit composition, the state can control eligibility, need, and amount of assistance. Indeed, as plaintiffs point out, the primary effect of consolidating assistance units under the Minnesota rule is to reduce the standard of need and the payment amount. Allowing the state to evade eligibility and payment regulations merely by labeling its rule as a rule governing the composition of assistance units would elevate form over substance and eviscerate the federal availability regulations. Therefore, the Court holds that Minnesota's assistance unit composition rule must comply with the federal availability regulations.

Defendant next argues that section 233.-20(a)(2)(viii) does not apply to the assistance unit composition rule because that section applies only where a state makes AFDC grants for specified needs such as shelter and utilities. Minnesota does not designate funds for specified need items in its standard of assistance, but instead employs a "consolidated standard" or "flat grant" system. Therefore, defendant asserts that section 233.20(a)(2)(viii) is wholly inapplicable to this case.

Defendant cites no authority for the assertion that section 233.20(a)(2)(viii) is inapplicable where states employ a consolidated standard of assistance. By its terms, the regulation prohibits relying on the income of non-legally responsible individuals to reduce "the money amount of *any need item* included in the standard [of assistance]." 45 C.F.R. § 233.20(a)(2)(viii) (emphasis added). Nothing in the language of the regulation indicates that the prohibition applies only to assistance standards that allocate specified amounts for specified needs. On the contrary, the phrase "any need item included in the standard" is broad enough to encompass reductions in a flat grant. By reducing a flat grant, which consolidates all need items, the state necessarily reduces all need items. The reduction of *all* need items falls squarely within the regulatory language prohibiting the reduction of *any* need item.

This reading of section 233.20(a)(2)(viii) is consistent with the availability principle, which applies with equal force regardless of whether a state employs a flat grant standard of assistance or a specified needs standard of assistance. Indeed, as plaintiffs point out, reading the regulation to apply only where the standard of assistance includes amounts allocated for specified needs would allow states to evade the restrictions of the availability principle altogether, merely by employing a flat grant system. Because neither the language of section 233.-20(a)(2)(viii) nor the policies underlying the availability principle support defendant's assertion that the section is inapplicable to consolidated standards of assistance, the Court holds that Minnesota's assistance unit composition rule must comply with section 233.20(a)(2)(viii).

Defendant's next argument is that section 233.90(a)(1) does not govern here, because it applies solely to the determination of whether an applicant has been deprived of parental support. Defendant points out that section 233.90(a)(1) begins with a sentence requiring states to consider only a child's parents and legally responsible stepparents to make "[t]he determination whether a child has been deprived of parental support or care." 45 C.F.R. § 233.90(a)(1). The second sen-

tence of the section provides that *"[u]nder this requirement,* the inclusion in the family, or the presence in the home, of ... any individual [other than a parent or legally responsible stepparent] is not an acceptable basis for a finding of ineligibility or for assuming the availability of income." 45 C.F.R. § 233.90(a)(1) (emphasis added). Because the second sentence of the regulation, which contains the prohibition on assuming the availability of income, begins with a clause referring back to the parental deprivation determination referred to in the first sentence, defendant argues that the regulation limits states only in their determination of parental deprivation.

This argument is not without force. As plaintiffs point out, however, a finding that a child has not been deprived of parental support would result in a finding of ineligibility. Section 233.90(a)(1) recognizes this by preventing states from relying on the income of persons other than parents and legally responsible stepparents to make a finding of ineligibility. But the regulation also proscribes relying on the presence of such persons in the household to assume the availability of income. Thus, the second sentence of the section appears to go beyond the eligibility determination to address the needs determination as well.[6]

Moreover, in this circuit, section 233.-90(a)(1) has not been read narrowly to apply only to the deprivation determination, but has been read to prevent states from reducing the size of AFDC grants because of the presence in the household of persons other than parents and stepparents. *Hoehle v. Likins,* 405 F.Supp. 1167, 1173 (D.Minn. 1975), *aff'd in relevant part,* 538 F.2d 229 (8th Cir.1976). This application of the regulation makes sense because whether the state assumes the availability of income to find lack of parental deprivation or to find lack of need, the end result is the same: an AFDC grant is eliminated or reduced on the basis of income that is not actually available to the child. Because section 233.90(a)(1) addresses not only the determination of parental depri-

vation, but also the determination of need, and because the *Hoehle* court applied the regulation in circumstances similar to those presented here, the Court holds that section 233.90(a)(1) applies to Minnesota's assistance unit composition rule.

Finally, defendant contends that, assuming the availability regulations apply, they are not violated by the assistance unit composition rule for two reasons. First, defendant asserts that the availability regulations only prohibit states from considering the income of persons who are not part of an assistance unit. In defendant's view, the regulations do not prohibit states from considering the resources of recipient children within the assistance unit itself.

Defendant does not, however, point to any language in the regulations to support this view. The regulations flatly prohibit a state from assuming that the income of a non-legally responsible person is available to dependent children or reducing the children's grant merely because they reside with persons who are not legally responsible for them. The regulations make no distinction between non-legally responsible persons inside the assistance unit and non-legally responsible persons outside the assistance unit. Moreover, it is only because of the state's rule that the non-sibling children in this case are within a given assistance unit in the first place. It is specious to rely upon the presence of the children in the assistance unit to avoid the availability regulations, when the very issue presented in this action is whether the state violated the availability regulations by placing the children in the assistance unit in the first place.

Second, defendant asserts that its assistance unit composition rule does not impute income to AFDC recipients that is not actually available to them. Plaintiff's theory is that defendant's assistance unit composition rule allows the income of one group of AFDC recipients to be imputed to a second group of non-sibling AFDC recipients residing in the

---

**6.** Contrary to defendant's assertion, the parental deprivation determination and the needs determination are not the same; a child might be deprived of the support or care of a parent, but

because of an independent source of income, not be considered needy. *Gorrie v. Bowen,* 809 F.2d 508, 514 (8th Cir.1987); *see also* 45 C.F.R. § 233.90(c)(1)(i).

same home, regardless of whether the funds of the first group are actually available to the second group. Defendant argues that because AFDC caretakers are legally obligated to use their entire AFDC grants for the benefit of all members of the assistance unit, the entire grant is actually available to both groups of non-sibling children residing in a household. In other words, the existence of a unitary grant for the entire consolidated assistance unit, in defendant's view, guarantees that the funds of the first group of recipients will be actually available to the second group.

This position is not without support. *MacInnes v. Commissioner of Public Welfare*, 412 Mass. 790, 593 N.E.2d 222, 226 (1992). The undisputed facts of this case, however, are that the AFDC caretakers here required the entire pre-consolidation grant to care for the first set of AFDC recipients in their charge.[7] Money that must be spent to satisfy the needs of the first group of AFDC recipients cannot be actually available to the second group of AFDC recipients, regardless of whether the caretaker receives one grant or two grants for the children in his or her care. Because Minnesota's assistance unit composition rule reduces AFDC grants to children based upon the fact that they reside with persons who are not legally responsible for them, without a determination that the income of those persons is actually available to the children, the Court holds that the rule violates the federal availability regulations.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

**IT IS ORDERED** that:

1. plaintiffs' motion for summary judgment is granted; and

2. defendant, her agents, employees and successors in office are hereby enjoined from consolidating AFDC filing units in such a way as to reduce the grant to AFDC recipients based upon the fact that they reside with other AFDC recipients who are not legally responsible for them, without making

a factual determination that the income of the non-legally responsible relatives is actually available to the AFDC recipients.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

7. This fact is not surprising, given that the AFDC grant for Patty's four children is some forty-three percent of the 1993 federal poverty guidelines, and the AFDC grant for Mrs. Yellow's daughter is some fifty-eight percent of the 1993 federal poverty guidelines. Annual Update of the HHS Poverty Guidelines, 58 Fed.Reg. 8287, 8288 (Feb. 12, 1993).