Bertha Mae **WILKES**; Tom W. Wilkes, as next friends of their minor grandchildren; Geraldine Yellow, on behalf of herself and as next friend of her minor child and minor grandchild, Appellees,

v.

Maria R. **GOMEZ**,\* in her official capacity as Commissioner of the Minnesota Department of Human Services, Appellant.

No. 93–3596.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1994.

Decided Aug. 23, 1994.

Department of Human Services, pursuant to Fed. R.App.P. 43(c).

Laurasue Schlatter, St. Paul, MN, argued (Hubert H. Humphrey, III, on the brief), for appellant.

Laurie N. Davison, Minneapolis, MN, argued (Monica Burczek and Tonja Orr, on the brief), for appellees.

Before FAGG and BEAM, Circuit Judges, and BOGUE,** Senior District Judge.

BEAM, Circuit Judge.

Maria R. Gomez, Commissioner of the Minnesota Department of Human Services (the "Commissioner"), appeals the district court's order granting summary judgment to

---

** The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

the Aid to Families with Dependant Children recipients (the "AFDC Recipients"), and denying the Commissioner's cross-motion for summary judgment. The district court held that Minnesota Rule 9500.2440, subpart 3, which consolidates nonsibling AFDC recipient children who reside with a single adult caretaker into a single "assistance unit," violates the "availability principle" embodied in federal AFDC regulations. The court enjoined the Commissioner from defining AFDC assistance units "in such a way as to reduce the grant to AFDC recipients based upon the fact that they reside with other AFDC recipients who are not legally responsible for them, without making a factual determination that the income of the non-legally responsible relatives is actually available to the AFDC recipients." *Wilkes v. Steffen,* 831 F.Supp. 723 (D.Minn.1993).

We must decide on appeal whether the Minnesota definition of assistance unit violates the federal availability principle regulations and, if not, whether the Minnesota rule violates federal regulations that mandate equitable treatment between AFDC recipients. We conclude that the Minnesota rule does not violate the applicable federal regulations and reverse the judgment of the district court.

## I. BACKGROUND

AFDC is a public assistance program funded and administered jointly by the federal and state governments under Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–87. States are not required to participate, but those states that do must administer their AFDC programs pursuant to a state plan that complies with federal statutes and regulations and is approved by the Secretary of Health and Human Services ("HHS"). 42 U.S.C. § 601; *Heckler v. Turner,* 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985); *King v. Smith,* 392 U.S. 309, 316–17, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968). The federal government reimburses the state for a portion of the funding for the program.

AFDC payments are available to children who have been deprived of parental support, are living with certain specified relatives, meet certain age requirements and satisfy state-established financial need standards. 42 U.S.C. §§ 602(a) & 606(a). Caretaker relatives who meet the state financial need requirements may receive AFDC benefits in addition to those provided for eligible dependent children. 42 U.S.C. § 602(a). For purposes of administering the program, AFDC recipients are grouped into "assistance units" that consist of "the group of individuals whose income, resources and needs are considered as a unit for purposes of determining eligibility and the amount of payment." 45 C.F.R. § 206.10(b)(5). One AFDC payment per month is made to each assistance unit.

Minnesota's AFDC plan is premised on the assumption that assistance units can achieve economies of scale as their size increases. Accordingly, although AFDC benefits increase incrementally with each additional child assigned to an assistance unit, per capita AFDC benefits decrease. *See* Minn.Rule 9500.2440, subp. 6 (AFDC family allowance table). For example, an assistance unit comprised of three children (assuming the caretaker adult is not eligible for AFDC benefits) would receive AFDC payments of $434 per month, while an assistance unit comprised of four children would receive $510 per month. *Id.* Although the larger group is entitled to more benefits in absolute terms, the per capita payment to the four-child assistance unit is lower ($127.50 per child) than the per capita payment to the three-child unit ($144.66 per child).

Prior to the enactment of the Deficit Reduction Act of 1984 (DEFRA), AFDC applicants could control the composition of their assistance units in order to maximize AFDC benefits.[1] *Bowen v. Gilliard,* 483 U.S. 587, 590, 107 S.Ct. 3008, 3011, 97 L.Ed.2d 485 (1987). DEFRA placed limits on the applicants' ability to control the composition of their assistance unit by providing, among

---

**1.** For example, if one dependent child in a household received support payments from an absent parent, she could be excluded from the AFDC unit in order to avoid disqualifying the rest of the family from AFDC benefits or to avoid reducing the family's level of benefits. *Bowen v. Gilliard,* 483 U.S. 587, 590, 107 S.Ct. 3008, 3011, 97 L.Ed.2d 485 (1987).

other things, that certain potentially eligible relatives living in the same household with the dependent child must be included in a single assistance unit. Generally, an assistance unit must contain the dependent child, any parent of the child living in the household and any siblings of the child living in the household. *See* 42 U.S.C. § 602(a)(38); 45 C.F.R. § 206.10(a)(1)(vii).[2]

Minnesota's AFDC plan has a two-step process to determine the size of an assistance unit. Minnesota first defines the "filing unit" to meet the minimum DEFRA requirements. *See* Minn.Rule 9500.2440, subp. 2.[3] The Minnesota scheme further provides that certain filing units must be combined into a single assistance unit:

> Eligible members of a filing unit who are required by federal law to apply for AFDC must be included in a single assistance unit. Members of separate filing units who live together must be included in a single assistance unit when:
>
> A. one caretaker makes application for separate filing units; and
>
> B. two caretakers, who are currently married to each other, make application for separate filing units.

Minn.Rule 9500.2440, subp. 3. The AFDC Recipients object to this rule, claiming that it forces them to share AFDC payments with relatives for whose support they are not legally responsible. According to the AFDC Recipients, the Minnesota rule violates the federal regulations by presuming that nonsibling dependent children living in the same household with a single caretaker relative will share AFDC funds.

None of the parties dispute the factual underpinning of the AFDC Recipients' challenge to the Minnesota rule. Bertha Mae Wilkes and Tom W. Wilkes care for ten grandchildren in their home. Four of the grandchildren are the children of Mrs. Wilkes's adult daughter, Patty, who does not reside in the Wilkes household. The other six grandchildren are the children of Mrs. Wilkes's deceased daughter, Angie. Prior to Angie's death, she and her six children lived in the Wilkes household, but were considered a separate assistance unit from Patty's children under the Minnesota rule.[4] After Angie's death, the Commissioner determined that because Mrs. Wilkes had become the only caretaker relative for both Patty's and Angie's children, the entire household consisted of one assistance unit of ten AFDC recipients under the Minnesota assistance unit composition rule. Mrs. Wilkes receives a payment of $902 per month for the assistance unit of ten dependent children.

The Wilkeses contend that their grandchildren should be divided into two separate assistance units; one consisting of Patty's four children and the other consisting of Angie's six children. Under the Minnesota AFDC plan, Patty's four children would then receive $510 per month and Angie's six children would receive $663 per month. Minn. Rule 9500.2440, subp. 6. Thus, total AFDC payments to the household would be $1,173 per month, $271 per month more than the children receive as a single assistance unit.

Geraldine Yellow, herself an AFDC recipient, cares for her minor daughter and for her minor grandson, the child of Mrs. Yellow's other daughter who does not reside in the household. The Commissioner determined that under the Minnesota assistance unit rule, all three AFDC applicants comprise a single assistance unit. In August 1992, Mrs. Yellow and her daughter received more than $5,000 in retroactive Social Security benefits. This lump-sum payment made the household ineligible for AFDC payments for a time. Mrs. Yellow now receives Social Security payments on her own behalf, and is disqualified by these payments from receiving AFDC assistance. The two children under Mrs. Yellow's care comprise a single AFDC assis-

---

**2.** A caretaker relative other than a parent is not required to be part of a dependent child's assistance unit.

**3.** Subpart 2 provides:

When an application for assistance is made for a dependent child, that child and all blood related and adoptive minor siblings of that child, including half-siblings, along with the parents of that child who live together, must be considered a single filing unit.
Minn.Rule 9500.2440, subp. 2.

**4.** Mr. and Mrs. Wilkes do not receive AFDC payments for themselves.

tance unit under the Minnesota rules. Just as the Wilkes family, Mrs. Yellow also would receive more money on behalf of her daughter and grandchild if they were assigned to separate assistance units.

## II. DISCUSSION

### A. Availability Principle

■■■ "[T]he starting point of the statutory analysis must be a recognition that the federal law gives each State great latitude in dispensing its available funds." *Dandridge v. Williams*, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970). Indeed, the Social Security Act provides that the state agency:

> shall, in determining need, take into consideration any other income and resources of any child or relative claiming [AFDC], or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid....

42 U.S.C. § 602(a)(7)(A). Nonetheless, the availability principle, demarked by certain federal court decisions and HHS regulations, limits state power to lower an AFDC recipient's benefits by imputing support from persons who have no obligation to furnish it. *Turner*, 470 U.S. at 200, 105 S.Ct. at 1147.

In *King v. Smith*, the Supreme Court held that Alabama's "substitute father" regulation—under which AFDC payments are denied to the children of a mother who cohabits with a man in or outside her home—was invalid because it defined "parent" in a manner inconsistent with 42 U.S.C. § 606(a). 392 U.S. at 329-30, 88 S.Ct. at 2139-40. The

Court held that although states may take account of "regular and actual contributions" to a dependent child from a nonlegally responsible individual in determining need, states may not assume that individuals with no legal obligation will make resources available to the child. *Id.* at 319, 329, 88 S.Ct. at 2134, 2139. The Court extended this rationale in *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970) holding that the amount of monthly AFDC payments may not be affected by the resources of individuals with no parental obligations. *See also Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975) (AFDC shelter allowance cannot be reduced based on mere presence in household of nonpaying lodger). HHS has codified the availability principle in at least three regulations in Title 45 of the Code of Federal Regulations at sections 233.20(a)(3)(ii)(D), 233.20(a)(2)(viii) and 233.90(a)(1).[5] The AFDC Recipients claim, and the district court held, that the Minnesota assistance unit rule violates these regulations by assuming that the income of one group of AFDC recipients is available to another group of nonsibling AFDC recipients residing in the same home.

After the district court's judgment in this case, HHS, the agency responsible for drafting the availability principle regulations, issued Action Transmittal No. ACF–AT–94–6 (Mar. 16, 1994), which states HHS's position on the matter. In response to "several recent challenges to State practices concerning consolidation of assistance units," *id.* at 1, HHS clarified its position that apart from including the minimum number of recipients required by DEFRA and its implementing regulations, "States are authorized to set the

---

5. We reproduce the relevant portions of the regulations below:

> To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D).

> A state plan ... must ... [p]rovide that the money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individ-

ual; and the agency will not assume any contribution from such individual for the support of the assistance unit [with certain exceptions].

45 C.F.R. § 233.20(a)(2)(viii).

> [For purposes of t]he determination whether a child has been deprived of parental support ... the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State....

45 C.F.R. § 233.90(a)(1).

State-wide policy, to be applied to all cases, whether and under what conditions two or more assistance units in the same household are to be consolidated or retained as separate units." *Id.* at 2 (citing Action Transmittal SSA–AT–86–1 and 57 Fed.Reg. 30,132, 30,136–37 (1992)). HHS specifically addressed all three regulations cited by the AFDC Recipients and concluded that these regulations deal only with eligibility, need, amount of assistance and deprivation of parental support. They do not limit states' authority to consolidate assistance units. *Id.* at 3–4.

■ We are required to give substantial deference to an agency's interpretation of its own regulations. *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991). In a recent case involving the Secretary's interpretation of Medicare regulations, the Supreme Court instructed that:

we must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Gardebring v. Jenkins,* 485 U.S. 415, 430 [108 S.Ct. 1306, 1314, 99 L.Ed.2d 515] (1988). This broad deference is all the more warranted when, as here, the regulation concerns "a complex and highly technical regulatory program," in which the identification and classification

of relevant "criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 697 [111 S.Ct. 2524, 2534, 115 L.Ed.2d 604] (1991).

*Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, —— – ——, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994). AFDC is certainly a complex and highly technical regulatory program, and the issue at hand, which involves the allocation of limited AFDC resources, necessarily entails the exercise of judgment grounded in policy concerns. Accordingly, substantial deference to HHS's official position is warranted.[6]

■ We find HHS's construction of the availability principle faithful to the relevant regulations' plain language. Section 233.-20(a)(3)(ii)(D) precludes the state from counting as available to an assistance unit resources that are not actually or legally available to one of its members. Of course outside of AFDC, nonsiblings with independent resources have no obligation to share their assets, but states are permitted to consider the collective resources of an assistance unit to determine eligibility and amount of payment.[7] This is made more clear by section 233.20(a)(2)(viii) which provides that states cannot reduce payments based on "the presence *in the household* of a non-legally responsible individual; and the agency will not assume any contribution from such individual

---

6. Although it is true that an agency's interpretation of a regulation that conflicts with a prior regulation is entitled to considerably less deference, *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987), that maxim does not apply here. HHS has consistently interpreted its regulations to permit states broad discretion in defining assistance units. *See* Action Transmittal No. SSA–AT–86–1 at 4 (Jan. 13, 1986) ("it is up to the State to establish policy on the number of assistance units in the household, e.g., when an individual not related to a member of an assistance unit as a parent, brother or sister lives in the household and files for assistance"); 57 Fed.Reg. 30,132, 30,136 (1992) (examples in preamble to final rules implementing the DEFRA amendments).

7. Of course, if one child who had independent resources sufficient to preclude her eligibility

from AFDC was living in the same house with a nonsibling who was otherwise eligible, there is nothing in the Minnesota rules to require the two children to file together for AFDC. Each child (and *siblings* and parents living with the child) would constitute a filing unit under Minn.Rule 9500.2440, subp. 2. Because AFDC would be denied to the more affluent child, she could not then be combined with her nonsibling into a single assistance unit under Minn.Rule 9500.244, subp. 3.

Accordingly, we are puzzled that Mrs. Yellow's grandson was denied AFDC when she and her daughter received a social security payment sufficient to preclude them from AFDC assistance. Mrs. Yellow's grandson, like any other dependent child who lives with non-AFDC recipient relatives who are not siblings or parents, should have been entitled to file on his own behalf. We do not address this issue, however, because it is not properly before us.

for the support *of the assistance unit....*" By its terms, the regulation addresses the assets of members of the household that are not members of the assistance unit. Members of an assistance unit are bound together by the caretaker's obligation to spend AFDC funds in their best interests. *See* 42 U.S.C. § 605. Finally, section 233.90(a)(1) is confined by its terms to the determination of whether a child has been deprived of parental support.

Even if we were to give the HHS Action Transmittal less deference, we would uphold Minnesota's assistance unit composition rule against the availability principle challenge. The AFDC Recipients urge us to follow *Beaton v. Thompson,* 913 F.2d 701 (9th Cir.1990) and its progeny which hold that state regulations similar to the Minnesota rule violate the availability principle because they assume that nonlegally obligated individuals will share expenses. We agree instead with the Second Circuit that "*Beaton* did not recognize or discuss the distinction between a single caretaker who is obligated to expend AFDC funds for the benefit of all the minor children in her household and a non-legally responsible individual who has no corresponding obligation." *Bray v. Dowling,* 25 F.3d 135, 145 (2d Cir.1994). This distinction is dispositive. Individuals do not receive AFDC funds, assistance units do.

## B. Equitable Treatment

The AFDC Recipients also claim that Minnesota's assistance unit composition rule violates federal regulations that require equitable treatment among AFDC recipients. *See* 45 C.F.R. §§ 233.10(a)(1) & 233.20(a)(1) (determinations of eligibility, need and amount are to be made on an objective and equitable basis). The Wilkeses point out that the per capita AFDC benefits for Angie's children would be higher if they lived with non-AFDC recipients and therefore were not combined with others in a single assistance unit. Similarly, each child in the Yellow assistance unit would receive more per capita AFDC benefits if the child lived with non-AFDC recipients. The AFDC Recipients argue that the Minnesota plan unfairly prefers dependent children who live with relatively wealthy relatives. Therefore, they claim that the Minnesota assistance unit rule violates the federal mandate of equitable treatment.

The equity that the AFDC Recipients urge would require the same treatment for dependent children taken into a household with other AFDC recipients as for dependent children taken into a non-AFDC household. Minnesota has chosen instead to provide uniform AFDC benefits to similarly sized households with one caretaker relative. Thus, the ten dependent children in the Wilkes household, for example, receive the same amount of assistance whether they are siblings or not. It appears that the two forms of equity are mutually exclusive and we are not persuaded that the federal regulations require Minnesota to choose one over the other. *See Bray,* 25 F.3d at 146, Action Transmittal No. ACF–AT–94–6 at 6 (Mar. 16, 1994).

## III. CONCLUSION

For the reasons discussed above, we reverse the order of the district court and remand the case with the direction to dismiss the complaint.