Victor J. Orgera, J.
This is an article 78 proceeding to (1) annul the decision of the State Department of Social Services sustaining a determination of the respondent, Commissioner Kirby; (2) restore statutory entitlements to petitioner and her children retroactively and prospectively, and (3) declare 18 NYCRR 352.7 (g) (5) invalid as being inconsistent with Federal and State laws and regulations.
The petitioner and her five children, ranging in age from 3 to 10 years, were receiving an Aid to Dependent Children monthly grant of $695 from the Suffolk County Department of Social Services before the reduction which triggered this proceeding.
In October of 1975, at the petitioner’s request in writing, the Suffolk County Department of Social Services advanced the sum of $197.32 to prevent a shut-off of utilities. Such an advance allowance is authorized by 18 NYCRR 352.7 (g) (5), the pertinent parts of which are as follows: "(g) Payment for services and supplies already received. Assistance grants shall be made to meet only current needs. Under the following specified circumstances payment for services or supplies already received is deemed a current need: * * * (5) For a recipient of public assistance, an advance allowance may be provided to pay for utilities already furnished in the same dwelling in which he resides and for which a grant has been previously issued, to prevent a shut-off or to restore services. Such an allowance shall not exceed the cost of such utilities for the four-month period immediately preceding the advance payment, and may be provided only where the recipient has made a request in writing for such an allowance, and has also requested in writing that his grant be reduced in equal amounts over the next six months to repay the amount of advance allowance.”
In the present case, after certain adjustments in favor of the petitioner, the monthly budget was reduced by the sum of $19.55 per month for the following six months.
The thrust of the petition is that any reduction without a prior agency determination that undue hardship will not result is contrary to Federal and State laws and regulations (US Code, tit 42, § 601 et seq.; 45 CFR 233.20; 18 NYCRR 352.31 [d] [4]). The petitioner offered no evidence that hardship *362 resulted, nor has she explained her failure to pay the utility bills with the moneys allocated to her for that purpose. Her memorandum of law, in which petitioner urges that the advances should have been recouped pursuant to 18 NYCRR 352.31 (d) (4), which limits the monthly reduction to 10%, is self-defeating, as the reduction effected in the present case is less than 3% per month.
A collateral argument advanced by the petitioner is that by recouping, the Social Services Department renders it impossible for her to meet the current utility bills, and in her petition, alleges that there has been a further agency determination to reduce the grant as of April, 1976. As this has not reached the stage of fair hearing, this later reduction will not be considered by the court.
While this case concerns 18 NYCRR 352.7 (g) (5), recently, the First and Second Departments considered 18 NYCRR 352.7 (g) (7), and the Third Department considered both 18 NYCRR 352.7 (g) (5) and 18 NYCRR 352.7 (g) (7). All three departments arrived at somewhat different results.
The Second Department, in Matter of Dunn v Bates (50 AD2d 561, 562) was of the opinion that 18 NYCRR 352.7 (g) (7), which section governs advances for rent or relocation, "is invalid as written in that it fails to limit recoupment so as to avoid 'undue hardship’.” The facts of that case are quite different than the instant case in that it involved a denial of emergency assistance by a county commissioner on the grounds that the schedule of recoupment (six months) would result in a reduction of petitioner’s total monthly grant to but $4 a month. The Second Department held that under those circumstances, the petitioner was entitled to emergency assistance.
The First Department, in Reyes v Dumpson (51 AD2d 903, 904) found 18 NYCRR 352.7 (g) (7) to be invalid insofar as it permitted recoupment in some cases at a rate in excess of 15% of the monthly budget and stated that: "Repayment of an advance allowance should not be accorded harsher treatment than recoupment of overpayments made to a client because of fraud, and therefore recovery in the case at bar should be limited to 15% of petitioner’s current assistance grant (accord Matter of Dunn v Bates, 50 AD2d 561).”
In Matter of Adkin v Berger (50 AD2d 459, 461) the Third Department upheld the regulation in question here, finding that: "The advances received by petitioners were to pay their *363 regular monthly rent and utility bills which were long past due. Clearly, they were not nonrecoverable emergency payments within the meaning and intent of section 350-j of the Social Services Law”. The court observed that no satisfactory reason or excuse was presented by petitioners to explain their failure to pay the rent or utility bills and that the recipients were advised that the advances would be recovered by subsequent deductions in the budget. "Neither mandated by nor conflicting with other Federal or State laws or regulations, this program of advance payments provides an effective means whereby petitioners and others similarly situated can allocate a greater proportion of their public assistance grants to the times when they are in greater need and yet, because of the subsequent recovery of the advances, receive no more than their proportionate share of the limited assistance funds available. As such, the program plainly provides a beneficial service in a reasonable manner, and it should be sustained”, and "were we to hold otherwise and rule that the advances are not recoverable, we would be needlessly encouraging fraud and mismanagement in the handling of assistance moneys by the recipients thereof and also undermining the flat grant method of providing assistance which was designed to uphold the dignity of individual recipients by permitting them to control their own affairs.” (Id., pp 461, 462.)
The Court of Appeals, in Baumes v Lavine (38 NY2d 296, 304-305), a case involving emergency assistance, reasoned that emergency grants were not those intended to remedy anticipated demands created as a result of everyday life and that to make such a holding "would violate the concept of semimonthly flat grants to welfare recipients and inundate the Department of Social Services with requests for additional assistance to meet the everyday needs for which the vast population, also on fixed incomes, have learned to budget and expect.” Their reminder that "The power to set the level of benefits and the standard of need still rests with the State Legislature * * * and it is its continuing responsibility to consider and make adjustments to reflect changes in the cost of living” (citation omitted) has application here. The petitioner here seeks, in effect, to have this court determine her monthly budget, providing it is not less than $695 per month, and this the court may not and will not do.
With regard to the alleged unconstitutionality of 18 NYCRR 352.7 (g) (5), the United States Supreme Court, in Hagans v *364 Lavine (415 US 528, 539) speaking through Justice White stated: "We are unaware of any cases in this Court specifically dealing with this [18 NYCRR 352.7 (g) (7)] or any similar regulation and settling the matter one way or the other.” While the court did not reach the merits, Justice Rehnquist, in the dissenting opinion (p 562), commented that: "It would seem extraordinary if, having paid petitioners more than their normal monthly entitlement in order to meet an emergency situation, the State had not sought to recoup the payments over a period of time.”
The court feels constrained to make some remarks as to the nature and purposes of the assistance which brought on this case in the first place. Aid to Families with Dependent Children (AFDC) is a co-operative Federal-State program financed largely by the Federal Government and administered by the State. Those States desiring to participate are required to devise an AFDC plan which requires the approval of the Secretary of Health, Education and Welfare (US Code, tit 42, § 601 et seq.). The program has as its express purpose the encouraging of "the care of dependent children in their own homes”. Section 605 provides, in part, that whenever a State agency has reason to believe that allowances are not being used in the best interests of the child, they may take such steps as they deem necessary to provide for the best interests of the child, including protective payments and the imposition of criminal or civil penalties authorized under State law. Title 10 of the New York Social Services Law, entitled, "Aid to Dependent Children” is modeled after the Federal law and makes provision for the criteria for eligibility, the adequacy of allowances, the responsibility of the various administering agencies, all in furtherance of the national and state public policies. Section 349 of the New York Social Services Law requires:
"A. * * * 1. the granting of an allowance will be in the interests of such child, and
"2. the parent or other relative is a fit person to bring up such child so that his physical, mental and moral well-being will be safe-guarded”.
Section 350-a of the Social Services Law provides for protective payment where the relative is unable to manage the allowance and subdivision 3 of that section provides that a relative who willfully uses all or part of such allowance other than for the benefit of such child or children shall be guilty of *365 a misdemeanor. The court finds that these provisions are consistent with the Federal statutes and regulations.
Thus, the court will observe that while it is the parents’ responsibility in the first place to apply their grant prudently in the interests of their children, if they are unable to so do or refuse to so do, it is then the responsibility of the social welfare agency to take those steps authorized by law to see that the best interests of the children are protected. None of the parties to this proceeding have made mention of the effect, if any, the reduction may have had on the children. It is almost as if they are not a part of this proceeding, when, in reality, the children are what this is all about.
Nonetheless, the court here is faced with but one instance of an advance payment and recovery and finds its task somewhat simpler than those faced by the appellate courts referred to above, as, unlike 18 NYCRR 352.7 (g) (7), the regulation challenged here, 18 NYCRR 352.7 (g) (5), limits the advance allowance to the four-month period immediately preceding the advance and permits recoupment of the advance over the next six months. This built-in limitation not only distinguishes it from 18 NYCRR 352.7 (g) (7), which contains no limit or standard, but by its very nature would, in almost all but the most extraordinary cases, limit a budget reduction to 10% or less. Here, the monthly reduction amounted to less than 3% of the budget and it is difficult to conceive that such a miniscule reduction could result in "undue hardship.” Moreover, there is no assurance that a denial of recoupment would inure to the benefit of the children involved.
The court finds that the respondents have acted lawfully in applying the challenged regulation. It further finds that the challenged regulation is not violative of or inconsistent with Federal or State statutes or regulations. Accordingly, the petition is dismissed.