25 F.3d 135
 62 USLW 2782
 Penny BRAY and Curtistine Robinson, individually and on
behalf of all others similarly situated,
Plaintiffs-Appellees-Cross-Appellants,
v.
Michael J. DOWLING, as Commissioner of the New York State
Department of Social Services, and Richard F. Schauseil, as
Acting Director of the Monroe County Department of Social
Services, Defendants-Appellants-Cross-Appellees.
 Nos. 468, 602, 637, Dockets 93-7495, 93-7539, 93-7553.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1993.
Decided May 31, 1994.
 
 Denise A. Hartman, Asst. Atty. Gen., of the State of N.Y., Albany, NY (Robert Abrams, Atty. Gen., of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen. of the State of N.Y., of counsel), for defendant-appellant-cross-appellee Dowling.
 James A. Robinson, Deputy County Atty. of Monroe County, Rochester, NY, for defendant-appellant-cross-appellee Schauseil.
 Kenneth Shiotani, Rochester, NY (Bryan D. Hetherington, Dena R. Bauman, Monroe County Legal Assistance Corp., of counsel), for plaintiffs-appellees-cross-appellants.
 Before: MAHONEY and WALKER, Circuit Judges, and METZNER,* District Judge.
 MAHONEY, Circuit Judge:
 
 
 1
 Defendants-appellants-cross-appellees Michael J. Dowling,[1] Commissioner of the New York State Department of Social Services (the "NYSDSS"), and Richard F. Schauseil, Acting Director of the Monroe County Department of Social Services (the "MCDSS") (collectively the "Agency Defendants"), appeal from a judgment entered January 29, 1993 in the United States District Court for the Northern District of New York, Thomas J. McAvoy, Judge,[2] that granted plaintiffs-appellees-cross-appellants' motion for summary judgment, denied the Agency Defendants' motion for summary judgment, and entered a permanent injunction against the Agency Defendants. See Bray v. Kaladjian, No. 90-CV-831, 1992 WL 106322 (N.D.N.Y. May 5, 1992) ("Bray I ") (opinion supporting judgment).
 
 
 2
 On appeal, the Agency Defendants claim that the district court erred when it held that a State of New York policy used in implementing the federal Aid to Families with Dependent Children ("AFDC") program, under which all children living with an adult caretaker relative are considered part of one AFDC assistance unit even if the household contains children for whose support the caretaker relative is not legally responsible under state law, violated federal regulations that (1) prohibit states from assuming that a non-legally responsible individual will contribute income to an AFDC unit with which that individual lives, see 45 C.F.R. Secs. 233.20(a)(2)(viii), 233.90(a)(1) (1993); and (2) require equitable, uniform, and reasonable treatment of AFDC recipients. See 45 C.F.R. Secs. 233.10(a)(1), 233.20(a)(2)(iii) (1993).
 
 
 3
 The Agency Defendants also appeal from a subsequent order of the district court entered May 3, 1993, as corrected by an order dated May 7, 1993, which, inter alia, denied their motion for reconsideration that challenged certain of the terms of the permanent injunction. See Bray v. Bane, No. 90-CV-831, 1993 WL 153237 (N.D.N.Y. May 3, 1993, as corrected May 7, 1993) ("Bray II "). Plaintiffs-appellees-cross-appellants Penny Bray and Curtistine Robinson (collectively the "Caretaker Plaintiffs"), individually and on behalf of a class of adult caretaker relatives who are eligible for or receive grants under the AFDC program, cross-appeal from the judgment and orders of the district court raising several issues concerning the terms of the injunction.
 
 
 4
 We conclude that the challenged New York policy does not violate the applicable federal regulations, and therefore reverse the judgment of the district court and remand with the direction to dismiss the complaint. The Agency Defendants' appeal concerning the denial of their motion for reconsideration and the Caretaker Plaintiffs' cross-appeal concerning the terms of the injunction are accordingly dismissed as moot.
 
 Background
 
 5
 The Caretaker Plaintiffs receive assistance pursuant to the AFDC program. See 42 U.S.C. Sec. 601 (1988) et seq. They contend in this class action that a New York State administrative policy (the "Policy"), which implements the AFDC program and includes all children living with an adult caretaker relative in one AFDC budgeting unit even if the household contains children for whose support the caretaker is not legally responsible under state law,[3] violates applicable federal regulations. The basic structure of the AFDC program calls for partial federal funding and oversight. State plans implementing the program must be approved by the Secretary of Health and Human Services, see 42 U.S.C. Sec. 601 (1988), and must comply with applicable federal statutes and regulations. See Heckler v. Turner, 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985).
 
 
 6
 New York's grant scheme is premised upon the assumption that each AFDC assistance unit will achieve economies of scale as the size of the unit increases. Accordingly, as additional children join an assistance unit the amount of the grant that the unit receives increases in absolute terms, but decreases on a per capita basis to reflect the fact that each additional child will presumably benefit from a portion of all AFDC funds received by the assistance unit. See N.Y.Soc.Serv.Law Sec. 131-a (McKinney 1992 & Supp.1994) (setting forth grant schedules for households of various sizes). Thus, a caretaker relative would receive a smaller grant for her household if, as prescribed by the Policy, minor dependent relatives living with her for whom the caretaker is not legally responsible are combined with the caretaker and those minor dependents for whose support she is legally responsible in a single assistance unit, than if the nondependent minors were treated as a separate assistance unit.
 
 
 7
 In 1987, Penny Bray lived with her three minor children in Rochester, New York, receiving AFDC assistance as a four-person family unit. In April of that year, Bray took custody of two minor dependent nieces through an informal agreement with her sister (the nieces' mother), and applied to MCDSS to have the nieces added to her existing AFDC public assistance grant. After a hearing, MCDSS agreed to add the nieces to Bray's public assistance grant effective May 1, 1987. Thereafter, MCDSS provided Bray with a six-person public assistance grant.
 
 
 8
 Bray subsequently requested and received a hearing from NYSDSS to challenge MCDSS's failure to provide for her nieces as a separate two-person assistance unit. Bray argued that because she was not legally responsible for providing for her nieces under New York law,[4] her nieces should be treated as a separate assistance unit. Bray estimates that if her two nieces had been treated as a separate unit for purposes of the AFDC basic grant, the Bray household's AFDC grants would have totalled $946 per month; under the Policy, $896 was provided. After consultations between MCDSS and NYSDSS concerning the scope of the consent decree in Danks v. Perales, Civ. No. 81-1042 (N.D.N.Y. May 22, 1984), that are not relevant to this appeal,[5] NYSDSS concluded in May 1989 that MCDSS had acted appropriately in treating Bray's nieces as part of the same assistance unit.
 
 
 9
 Curtistine Robinson received custody of her niece pursuant to court order in December 1985, but was not legally responsible for her niece's support under New York law. See supra note 4. Prior to that time, Robinson had received public assistance only for herself. From March 1, 1986 to October 1, 1987, MCDSS provided Robinson with a two-person AFDC assistance grant. Robinson requested and received a hearing to review the adequacy of her grant, claiming that both she and her niece should receive one-person grants. Robinson estimates that if her niece had been treated as a separate unit, the Robinson household's AFDC grants would have totalled $458 per month; under the Policy, $410 was provided. On July 24, 1987, the NYSDSS determined that Robinson was not eligible to receive a separate grant of assistance, and that MCDSS had correctly treated Robinson and her niece as a two-person household.
 
 
 10
 On July 24, 1990, Bray and Robinson commenced this action pursuant to 42 U.S.C. Sec. 1983 (1988) on behalf of themselves and all others similarly situated. In an amended complaint dated May 2, 1991, they sought declaratory and injunctive relief invalidating the Policy on the basis that it violated federal regulations which: (1) prohibit states from assuming that a non-legally responsible individual will contribute income to an AFDC unit with which he lives, see 45 C.F.R. Secs. 233.20(a)(2)(viii), 233.90(a)(1) (1993);[6] and (2) require equitable, uniform, and reasonable treatment of AFDC recipients. See 45 C.F.R. Secs. 233.10(a)(1), 233.20(a)(2)(iii) (1993).[7] Pursuant to a stipulation between the parties, the court certified the suit as a class action in April 1992.[8]
 
 
 11
 An AFDC grant essentially consists of three elements: (1) a basic allowance, used to cover expenses such as food, clothing, and various household items; (2) a home energy allowance and supplemental home energy allowance; and (3) an allowance for shelter and heat. See Bray I at * 9 n. 4; N.Y.Comp.Codes R. & Regs. tit. 18, Secs. 352.2-352.3, 352.5 (1993). The Caretaker Plaintiffs conceded in their amended complaint that federal law generally permits the states to prorate allowances for shelter and utilities when the AFDC assistance unit lives together with other individuals as a household, see 45 C.F.R. Sec. 233.20(a)(5) (1993), supra note 6, and that this prerogative includes the power to treat all AFDC recipients sharing a single household as a single AFDC unit for purposes of calculating the shelter and utilities allowance. See Bray I at * 3.
 
 
 12
 The Caretaker Plaintiffs objected, however, to having dependent minor relatives for whose support they were not legally responsible included in their assistance units for purposes of calculating basic allowances, home energy allowances, and supplemental home energy allowances. The Caretaker Plaintiffs contended that because they had no legal obligation to support the children (other than their own) for whom they provided, the Policy's presumption that they will share AFDC funds is unjustified and penalizes them for keeping families together. See Bray I at * 2. They argued that instead of simply presuming that households will pool all income, the Agency Defendants should be required to "hold a hearing to determine whether the caretaker's economic situation allow[ed] her to pool income among all children. If the situation is such that pooling is impossible, ... the additional children should be treated as a separate family unit and be afforded benefits concomitant therewith." Id.
 
 
 13
 The Caretaker Plaintiffs moved, and the Agency Defendants cross-moved, for summary judgment. After oral argument, the district court granted the Caretaker Plaintiffs' motion for summary judgment. Relying upon Beaton v. Thompson, 913 F.2d 701 (9th Cir.1990), in which the Ninth Circuit invalidated a substantially similar Washington state regulation, the district court held that "a procedure which presumes that [a caretaker in the situation of Bray and Robinson] will share all expenses with their related charges denies them uniform treatment under [Sec. 233.10(a)(1) ],"[9] and that "the presumption that the caretaker will share its resources with these related charges under a theory of economies of scale ... does not comport with a fair reading of ... [Secs. ]233.20(a)(2)(viii) and 233.90(a)(1)." Bray I at * 8. The court concluded, however, that while the Agency Defendants could not presume that a relative caretaker would share resources with minor dependent children whom the caretaker was not legally obligated to support, the Agency Defendants could include all children in the household in a single AFDC grant "provided the state first makes a determination whether the caretaker will or can share its resources with the related children." Id. at * 9. The court then directed the parties to submit proposed language for an injunction.
 
 
 14
 By order dated December 26, 1992, after a recital that the Policy violated Secs. 233.10(a)(1), 233.20(a)(2)(iii) and (viii), and 233.90(a)(1), the district court enjoined the Agency Defendants from "presuming that the public assistance income and resources of a caretaker or her children will be shared with other children in her care for whom she is not legally responsible." (Footnote omitted.) The order further provided:
 
 
 15
 Defendants may only budget the parts of the AFDC grants (other than the rent and fuel for heating allowances) of plaintiffs and members of the plaintiff class as a single AFDC household budgeting unit when: 1) an individualized hearing is first held to show the amount of income from one assistance unit that has been made actually available to the other assistance unit; or 2) the head of each assistance unit knowingly and voluntarily agrees to make the income of the assistance unit actually available to the members of the other assistance unit.
 
 
 16
 The order also directed the Agency Defendants, inter alia, to provide various notices to local social service districts and their clientele, revise affected regulations and other policy materials, and assemble pertinent statistical information in order to implement the mandated changes in the Policy. The court signed a separate order the same date that stayed its remedial order. A judgment was entered on January 29, 1993 that awarded summary judgment to the Caretaker Plaintiffs in accordance with the court's remedial order.
 
 
 17
 The Agency Defendants subsequently moved for reconsideration, seeking modification of certain of the terms of the court's remedial order. The Caretaker Plaintiffs cross-moved for partial lifting of the outstanding stay to require the Agency Defendants "to identify class members and prepare the necessary changes in regulations and other policy materials required by [the court's remedial order] pending final judicial resolution of this case." The district court denied both motions. Bray II at * 2.
 
 
 18
 The Agency Defendants then appealed to this court both from the district court's judgment and from its order that denied their motion for reconsideration. The Caretaker Plaintiffs cross-appealed, challenging the district court's refusal to provide certain additional relief in its judgment incorporating the remedial order. The Caretaker Plaintiffs thereafter moved in this court that the district court's stay of its remedial order be partially lifted, seeking the same relief that had been denied in Bray II. Their motion was denied by an order of this court entered July 13, 1993.
 
 Discussion
 
 19
 As previously noted, the AFDC program is a cooperative federal-state public assistance program which requires states that elect to participate in the program to administer the state plans in conformity with a variety of federal statutes and regulations. See Heckler, 470 U.S. at 189, 105 S.Ct. at 1141; Withey v. Perales, 920 F.2d 156, 157 (2d Cir.1990). In determining whether a state regulation is permissible, "the starting point of the statutory analysis must be a recognition that the federal law gives each State great latitude in dispensing its available funds." Dandridge v. Williams, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158-59, 25 L.Ed.2d 491 (1970); see also NYSDSS v. Dublino, 413 U.S. 405, 414, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973) ("States 'have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.' ") (quoting King v. Smith, 392 U.S. 309, 318-19, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118 (1968)); Rosado v. Wyman, 397 U.S. 397, 408, 90 S.Ct. 1207, 1216, 25 L.Ed.2d 442 (1970) ("On both scores [standard of need and level of benefits,] Congress has always left to the States a great deal of discretion.") (citing King, 392 U.S. at 318, 88 S.Ct. at 2133-34). Thus, " '[s]o long as the State's actions are not in violation of any specific provision of the Constitution or the Social Security Act,' the courts may not void them." Dublino, 413 U.S. at 423 n. 29, 93 S.Ct. at 2518 n. 29 (quoting Jefferson v. Hackney, 406 U.S. 535, 541 (1972) (alteration in Dublino )); see also Rush v. Smith, 573 F.2d 110, 115 (2d Cir.1978) (same).
 
 
 20
 The Agency Defendants contend on appeal that the district court's decision failed to accord the deference to state determinations required by federal law. They also argue that the federal agencies charged with administration of the AFDC program have explicitly recognized the validity of the Policy; and that the Policy does not contravene the federal regulations cited by the district court as invalidating it. In assessing these contentions, we address: (1) the relevant statutory structure and history; (2) pertinent AFDC interpretations by the federal agencies charged with the administration of the AFDC program; and (3) the asserted inconsistency of the Policy with applicable federal regulations.
 
 
 21
 A. Statutory Structure and History.
 
 
 22
 For purposes of administering the program, AFDC recipients are grouped into "assistance units," consisting of "all individuals whose needs, income, and resources are considered in determining eligibility for, and the amount of, a[n assistance] payment...." 45 C.F.R. Sec. 205.40(b)(1) (1993). Neither the Social Security Act nor the corresponding regulations comprehensively define the composition of an AFDC assistance unit, but the Social Security Act permits states considerable latitude in deciding the composition of an AFDC assistance unit. The statute provides that
 
 
 23
 the State agency ... shall, in determining need, take into consideration any other income and resources of any child or relative claiming [AFDC], or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid....
 
 
 24
 42 U.S.C. Sec. 602(a)(7)(A) (1988).
 
 
 25
 As part of the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98-369, 98 Stat. 494 (1984), Congress amended the Social Security Act to require that as a general rule, parents and siblings (as well as grandparents in the case of a minor parent) who live in the same household with an AFDC beneficiary be included in a single AFDC assistance unit. See DEFRA Sec. 2640(a), 98 Stat. 1145 (codified as amended at 42 U.S.C. Sec. 602(a)(38) and (39) (Supp. II.1990)).[10] However, there is no statutory or regulatory provision expressly addressing the question whether, when a single relative caretaker receiving AFDC takes in minor dependent children for whom she is not legally responsible, the caretaker and those children should be deemed to constitute a single AFDC assistance unit.
 
 
 26
 The Caretaker Plaintiffs contend that when Congress specified in DEFRA that certain family members living in the same household unit must be considered a single assistance unit, see Sec. 602(a)(38) and (39), supra note 10, Congress "could have chosen to add other non-legally responsible relatives." They argue that by applying the principle of expressio unius est exclusio alterius, this court should infer that Congress meant to prohibit states from including other non-legally responsible relatives who live in the same household with an AFDC beneficiary in that beneficiary's unit.
 
 
 27
 The inference is not warranted. DEFRA's purpose in adding these provisions was to prevent families that apply for assistance from "exclud[ing] from the filing unit certain family members who have income which might reduce the family benefit." S.Print No. 169, vol. I, 98th Cong., 2d Sess. 980 (1984); see also H.Conf.R. No. 861, 98th Cong., 2d Sess. 1407 (1984), reprinted in 1984 U.S.C.C.A.N. 1445, 2095 (same); Bowen v. Gilliard, 483 U.S. 587, 592-93, 107 S.Ct. 3008, 3012-13, 97 L.Ed.2d 485 (1987) (same) (citing S.Print No. 169 and H.Conf.R. No. 861). It would be anomalous to conclude that, as part of an act designed to reduce budget outlays, Congress would prohibit states from employing the cost-saving measure of including members of an extended family who reside together in a single AFDC assistance unit. Indeed, under the rigid reading of the statute that the Caretaker Plaintiffs propose, the state would be precluded from including extended family members in a single assistance unit even if the state had first determined that the household functioned as a single economic unit. Such a determination is concededly permissible under the remedial order of the district court, however, and this aspect of the remedial order is not challenged by the Caretaker Plaintiffs' cross-appeal.
 
 
 28
 B. Pertinent Agency Interpretations.
 
 
 29
 The Department of Health and Human Services ("HHS") is presently responsible for the administration of the Social Security Act, as was its predecessor, the Department of Health, Education and Welfare ("HEW"). Both agencies have consistently taken the position that states have the option to treat a relative caretaker and minor children in her household for whom she is not legally responsible as a single AFDC assistance unit.
 
 
 30
 In a memorandum dated October 13, 1976 to a regional HEW official who had inquired regarding the proper definition of an AFDC assistance unit, the Administrator of HEW's Social and Rehabilitation Service opined that:
 
 
 31
 States may ... provide for two AFDC payments in the case of a mother who is the caretaker relative for her own children and her sister's children. In such a situation, the State may establish two budget units or it may include all children in one AFDC payment. Federal matching would be available in either budgeting method.
 
 
 32
 Memorandum dated October 13, 1976 from Robert Fulton, Administrator, Social and Rehabilitation Service to Alwyn L. Carty, Regional Commissioner, Region III, Social and Rehabilitation Service.
 
 
 33
 In Allen v. Hettleman, 494 F.Supp. 854 (D.Md.1980), the question was presented whether the State of Maryland could include a minor mother and her child in a single AFDC assistance unit with the minor mother's parent and siblings, all of whom lived in the same household. The court ruled that this arrangement was permissible, rejecting both statutory and constitutional challenges. See 494 F.Supp. at 872. Before ruling, the court solicited the views of the Secretary of HEW, who responded that " '[i]t is the position of the Secretary ... that the challenged portion of the Maryland regulation is fully permissible under Federal law and regulations,' " and that--
 
 
 34
 "The composition of an AFDC assistance unit is not defined in Federal law. So too, the budgeting methods a state may use to determine the level of an AFDC payment to a family is not mandated by Federal requirements. Therefore, states are free to prescribe the composition of an AFDC assistance unit and the budgeting method they will use for such unit."
 
 
 35
 Id. at 861 (quoting Secretary's letter).
 
 
 36
 Following the enactment of DEFRA, HHS addressed the filing unit provisions enacted by DEFRA Sec. 2640 (codified at Sec. 602(a)(38) & (39), supra note 10) in Action Transmittal No. SSA-AT-86-1 (Jan. 13, 1986). After discussing several specific situations that are not presented in this case, the transmittal stated that "it is up to the State to establish policy on the number of assistance units in the household, e.g., when an individual not related to a member of an assistance unit as a parent, brother or sister lives in the household and files for assistance." Id. at 4.
 
 
 37
 After the argument of this appeal, HHS issued Action Transmittal No. ACF-AT-94-6 (Mar. 16, 1994), which "re-state[s] the policy governing the authority of State agencies to consolidate assistance units and ... clarif[ies] that such a consolidation does not conflict with the Federal regulations that prohibit assuming the availability of income from certain persons without actually determining that it has been contributed." Id. at 1.[11] The transmittal specifies that aside from complying with two federal requirements (not applicable here) that mandate consolidation of AFDC assistance units, "States are authorized to set the State-wide policy, to be applied to all cases, whether and under what conditions two or more assistance units in the same household are to be consolidated or retained as separate units." Id. at 2 (citing Action Transmittal No. SSA-AT-86-1; 57 Fed.Reg. 30,136-37 (1992)).
 
 
 38
 These consistent interpretations by the agencies entrusted with the administration of the Social Security Act "are due deferential treatment in the courts." Atlantic States Legal Found., Inc. v. Eastman Kodak Co., 12 F.3d 353, 358 (2d Cir.1994) (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984)); see also Luyando v. Grinker, 8 F.3d 948, 952 (2d Cir.1993) ("When Congress's intent is ambiguous, we normally confer agency interpretations considerable deference."); Vanscoter v. Sullivan, 920 F.2d 1441, 1449 & n. 14 (9th Cir.1990) ("reasonable" HHS interpretation of statute accorded deference); St. Mary's Hosp. v. Blue Cross & Blue Shield Ass'n, 788 F.2d 888, 890 (2d Cir.1986) ("interpretive guides" regarding medicare and medicaid "entitled to be given weight"); cf. Liegl v. Webb, 802 F.2d 623, 626 (2d Cir.1986) (interpretive guidelines may be "disregard[ed] after due consideration").
 
 
 39
 In this case, however, the district court "f[ound] the cited agency determinations to be of little influence in its final determination." Bray I at * 7. The court concluded that "the federal agency abstained from making a determination as to the issue now before the court" because "the federal agency simply stated that the state may treat plaintiffs as one unit OR it may treat plaintiffs as two units." Id. at * 6. We disagree with this assessment. In consistently stating that the states have the disjunctive option to which the district court refers, HEW/HHS can hardly be said to have "abstained" from deciding whether a state policy that selects one of the permitted options thereby violates federal law. Rather, as we view the matter, HEW/HHS has unequivocally sanctioned the Policy as consistent with federal law.
 
 
 40
 The remaining question, to which we now turn, is whether the Policy nonetheless contravenes the applicable regulations promulgated by HHS.
 
 
 41
 C. Asserted Inconsistency of the Policy with Applicable Federal Regulations.
 
 
 42
 As discussed earlier, the district court ruled that the Policy conflicts with Secs. 233.20(a)(2)(viii) and 233.90(a)(1), see supra note 6, by presuming that a caretaker will share her resources with minor household members for whom the caretaker is not legally responsible, see Bray I at 8; and with Secs. 233.10(a)(1) and 233.20(a)(2)(iii) by denying such caretakers uniform treatment. See Bray I at 8; supra notes 7 and 9. We now address these rulings in turn.
 
 1. Presumption of Contribution
 
 43
 The Agency Defendants contend that neither Sec. 233.20(a)(2)(viii) nor Sec. 233.90(a)(1) is applicable to the Policy's presumption that a relative caretaker will pool AFDC funds with dependent children in her household whom she is not legally obligated to support. Instead, they argue, the regulations apply only to bar any state presumption that outside income from non-legally responsible individuals in a household will be available to meet the needs of dependent minors therein. We agree.
 
 
 44
 Sections 233.20(a)(2)(viii) and 233.90(a)(1) were established to address specific concerns regarding the imputation of income from non-AFDC sources. HEW initially promulgated both regulations to implement the Supreme Court's decisions in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and Van Lare v. Hurley, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). See Van Lare, 421 U.S. at 345, 95 S.Ct. at 1747 ("[HEW] codified the holding of King v. Smith in 45 CFR Sec. 233.90(a)"); Swift v. Blum, 598 F.2d 312, 312-13 (2d Cir.1979) (per curiam) (referring to 45 C.F.R. Secs. 233.20(a)(2)(viii) and 233.90(a) as "implementing regulations" for Van Lare ), cert. denied, 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); 42 Fed.Reg. 6583, 6584 (1977) (stating that Secs. 233.20(a)(2)(viii) and 233.90(a) were promulgated to implement Van Lare ). Both King and Van Lare invalidated state regulations which presumed that non-AFDC recipients would contribute financially to AFDC recipients with whom they shared a household on the basis that absent some legal duty, such support might not be forthcoming.
 
 
 45
 King disapproved Alabama's "substitute father" regulation, under which the State denied AFDC payments to minor children whose mother cohabited with a man who was not the children's father. See 392 U.S. at 311, 88 S.Ct. at 2130. Van Lare addressed a New York State "lodger" regulation that reduced pro rata the shelter allowance provided an AFDC unit that shared a household with nonpaying lodgers. See 421 U.S. at 339-40, 95 S.Ct. at 1743-44; see also Lewis v. Martin, 397 U.S. 552, 559-60, 90 S.Ct. 1282, 1285-86, 25 L.Ed.2d 561 (1970) (invalidating California regulation that presumed contribution of non-AFDC resources by non-legally obligated nonadoptive stepfather or "common law" husband of AFDC beneficiary's mother).
 
 
 46
 In all these cases, the needy AFDC beneficiaries had no recourse if the "substitute father" or "lodger" failed to contribute to the AFDC unit, because no duty existed under state law for these "outsiders" to apply their income for the support of the beneficiaries. The uncertainty of support that animated these cases and the federal regulations is absent here.
 
 
 47
 Federal law can be read to mandate "that the caretaker use all of the [AFDC] grant for the benefit of everyone in the assistance unit." MacInnes v. Commissioner of Public Welfare, 412 Mass. 790, 593 N.E.2d 222, 226 (1992) (construing 42 U.S.C. Sec. 605 (1988), see 593 N.E.2d at 225); see also Jackson v. O'Bannon, 633 F.2d 329, 336 (3d Cir.1980) ("The entire AFDC program relies on the integrity of the parent or custodian who is expected to disburse the child's grant in accordance with the statutory purpose."). In any event, federal law authorizes states to take steps to ensure that AFDC funds are spent in the best interests of the child, including the provision of protective payments to third parties, seeking the appointment of a guardian or legal representative for an AFDC beneficiary, or the imposition of criminal or civil penalties under state law. See Sec. 605.
 
 
 48
 New York law accordingly provides for both protective payments and the imposition of criminal sanctions for the wilful use of an AFDC allowance other than for the support of its intended beneficiary. See N.Y.Soc.Serv.Law Sec. 350-a (McKinney 1992); see also Morales v. State Dep't of Social Servs., 89 Misc.2d 360, 364-65, 391 N.Y.S.2d 268, 270-71 (Sup.Ct.1976). Most explicitly, Sec. 350-a(3) provides that: "Any relative or other person who is granted an allowance of aid to dependent children for the benefit of a child or children and who wilfully uses all or any part of such allowance other than for the benefit of such child or children, shall be guilty of a misdemeanor."
 
 
 49
 This legal obligation to spend the grant on behalf of the children in the AFDC unit distinguishes this case from those involving presumption of support from outside income. See Jackson, 633 F.2d at 336 (rule of King, Lewis and Van Lare inapplicable in case involving presumption of support with AFDC funds because "the presumption involved is one of application of government benefits, not independent income or resources as was true in [King, Lewis, and Van Lare ]"). The state law obligation to spend the AFDC funds in the children's best interests "makes it reliably certain that [t]his income is actually available for the support of the children in the household." Lewis, 397 U.S. at 558, 90 S.Ct. at 1285. We therefore conclude that the Policy, under which all children living with an adult caretaker relative are considered part of one AFDC assistance unit even if the household contains children for whom the caretaker is not legally responsible, does not contravene Secs. 233.20(a)(2)(viii) and 233.90(a)(1). See MacInnes, 593 N.E.2d at 226 (holding that comparable Massachusetts regulation does not assume contribution from "non-legally responsible person" because caretaker is responsible for spending AFDC grant for benefit of all children in the AFDC unit).
 
 
 50
 The Caretaker Plaintiffs cite a number of federal and state cases which, they contend, call for the invalidation of the Policy as violative of Secs. 233.20(a)(2)(viii) and 233.90(a)(1). See Edwards v. Healy, 12 F.3d 154 (9th Cir.1993); Beaton v. Thompson, supra; Swift v. Blum, supra; Wilkes v. Steffen, 831 F.Supp. 723 (D.Minn.1993); Gurley v. Wohlgemuth, 421 F.Supp. 1337, 1342-43 (E.D.Pa.1976); Morrell v. Flaherty, 109 N.C.App. 628, 428 S.E.2d 492, 496, stay granted, 333 N.C. 792, 430 S.E.2d 424 review allowed, 334 N.C. 165, 432 S.E.2d 364 (1993). However, these cases are either inapposite or unpersuasive.
 
 
 51
 Swift involved a New York regulation that prorated AFDC benefits when the child of an AFDC recipient whose needs were met by non-AFDC sources (and who was thus not eligible for benefits) resided with the assistance unit. See 598 F.2d at 312. That case, however, involved the state's assumption that outside income, rather than AFDC monies, would be made available to the AFDC unit, and is therefore inapposite for the reasons previously stated. Further, as the Caretaker Plaintiffs conceded at oral argument, Swift' § holding was overruled by Congress with the enactment of DEFRA.
 
 
 52
 Gurley involved the application of a Pennsylvania regulation, which treated all AFDC recipients living in a dwelling unit (except for boarders and their dependents) as a single assistance unit, to a situation where two sisters resided in a single household with minor children entitled to AFDC assistance for whom the sisters were separately responsible. See 421 F.Supp. at 1338 & n. 2. The Gurley court held that the Pennsylvania regulation contravened Sec. 233.90(a) because each sister "only ha[d] an obligation to spend the [AFDC] funds to benefit the children for whom ... she is the specified relative, not to benefit some other AFDC child." 421 F.Supp. at 1346; see also 45 C.F.R. Sec. 237.50(b)(4) (1993) (in two-caretaker situation, "there may be two AFDC families (assistance units)"). In this case, by contrast, the Caretaker Plaintiffs are legally obligated to spend the AFDC funds for the benefit of all the minor children in their households.
 
 
 53
 The other cases cited by the Caretaker Plaintiffs involve regulations that are substantially similar to the Policy. However, we do not find these cases persuasive. Beaton is the leading case. It relies upon Gurley and a prior Ninth Circuit case, McCoog v. Hegstrom, 690 F.2d 1280 (9th Cir.1982). "McCoog involved Oregon regulations that reduced the shelter component of the AFDC grant when children receiving benefits lived with non-legally responsible relatives who were not receiving benefits." Beaton, 913 F.2d at 703-04. As previously discussed, Gurley addressed the situation of a two-caretaker household. In relying upon McCoog and Gurley, Beaton did not recognize or discuss the distinction between a single caretaker who is obligated to expend AFDC funds for the benefit of all the minor children in her household and a non-legally responsible individual who has no corresponding obligation. Because we regard the distinction as dispositive, we decline to follow Beaton.
 
 
 54
 Edwards simply followed Beaton. In addition, both Wilkes and Morrell were strongly influenced by the Beaton ruling. See Wilkes, 831 F.Supp. at 728-29; Morrell, 428 S.E.2d at 496-97. But see MacInnes, 593 N.E.2d at 226 (rejecting Beaton ). Additionally, in our view, Wilkes accords inadequate deference to the expressed HEW/HHS views regarding the discretion afforded to states regarding the definition of AFDC assistance units, see 831 F.Supp. at 730-31, and Morrell misconstrues the impact of the enactment of DEFRA upon that discretion. See 428 S.E.2d at 495.
 
 
 55
 2. Uniform Treatment.
 
 
 56
 The district court also concluded that the Policy violates federal regulations that require uniform treatment of AFDC recipients. See Bray I at * 8; supra note 9. As previously noted, Sec. 233.20(a)(2)(iii) mandates that the standard of assistance "must be uniformly applied throughout the State." See supra note 7.[12]
 
 
 57
 New York has chosen to premise uniformity upon identical treatment of similarly sized households receiving AFDC assistance in which one caretaker relative is required to expend the AFDC funds in the best interests of all members of such households. The uniformity that the Caretaker Plaintiffs advocate would ensure that dependent children such as the nieces in this case will receive the same AFDC benefit if they are taken into a household that already constitutes an AFDC assistance unit as they would receive if they were taken into a non-AFDC household. The Caretaker Plaintiffs do not persuade us that the federal requirement of a uniform statewide standard for AFDC assistance that is expressed in Sec. 232.20(a)(2)(iii) should be read to invalidate the New York choice, and mandate the substitution of the alternative for which the Caretaker Plaintiffs contend. Cf. Dandridge, 397 U.S. at 487, 90 S.Ct. at 1163 ("intractable economic, social, and even philosophical problems presented by public welfare assistance programs" more appropriately decided by state officials than federal courts).
 
 Conclusion
 
 58
 The judgment of the district court is reversed and the case is remanded with the direction to dismiss the complaint. The Agency Defendants' appeal concerning the denial of their motion for reconsideration and the Caretaker Plaintiffs' cross-appeal concerning the terms of the district court's remedial order are dismissed as moot.
 
 
 
 *
 The Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Upon his confirmation as Commissioner of the New York State Department of Social Services, Michael J. Dowling was substituted for former Acting Commissioner Gregory M. Kaladjian as the named state defendant in this case. See Fed.R.App.P. 43(c)(1). Similarly, Kaladjian was previously substituted for Commissioner Mary Jo Bane, who was previously substituted for Commissioner Cesar A. Perales
 
 
 [2]
 Judge McAvoy became Chief Judge of the United States District Court for the Northern District of New York on April 6, 1993
 
 
 [3]
 The Policy is set forth at title 18, sections 369.2(a)(1)(ii)(a) and 369.3(a)(3)(i) (1993) of the Official Compilation of Codes, Rules and Regulations of the State of New York. Section 369.2(a)(1)(ii)(a) provides:
 When [a] child is living with an eligible relative other than a parent, who is without adequate means of support, financial need shall be determined for the family unit in accordance with public assistance standards.
 Section 369.3(a)(3)(i) provides:
 If children of different parentage are living with the same eligible relative, a single grant shall be issued to meet the needs of all children in the household receiving [AFDC].
 
 
 [4]
 See N.Y.Dom.Rel.Law Sec. 32 (McKinney 1988 & Supp.1994); N.Y.Soc.Serv.Law Sec. 101 (McKinney 1992); N.Y.Fam.Ct.Act Secs. 413 (McKinney Supp.1994), 415 (McKinney 1983)
 
 
 [5]
 The amended complaint in this case alleged that the Policy violated the Danks consent decree. The district court ruled against the Caretaker Plaintiffs on this claim, see Bray I at * 7, and they have not challenged that ruling on their cross-appeal
 
 
 [6]
 Section 233.20(a)(2)(viii) provides in pertinent part:
 A State Plan for ... AFDC ... must ... [p]rovide that the money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individual; and the agency will not assume any contribution from such individual for the support of the assistance unit except as provided in paragraphs (a)(3)(xiv) and (a)(5) of this section and Sec. 233.51 of this part.
 Section 223.20(a)(3)(xiv) deals with stepparents, and Sec. 233.51 deals with sponsored aliens; they are not pertinent in this case. Section 233.20(a)(5) states in pertinent part that a state plan for AFDC must "[p]rovide that the State agency may prorate allowances in the need and payment standards for shelter, utilities, and similar needs when the AFDC assistance unit lives together with other individuals as a household...."
 Section 233.90(a)(1) provides:
 A State Plan under title IV-A of the Social Security Act shall provide that:
 (1) The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his or her parent who is the principal earner will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is married, under State law, to the child's natural or [adoptive] parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State....
 
 
 [7]
 Section 233.10(a)(1) provides in pertinent part:
 A State plan under title ... IV-A ... of the Social Security Act must:
 (1) Specify the groups of individuals, based on reasonable classifications, that will be included in the program, and all the conditions of eligibility that must be met by the individuals in the groups. The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act.
 Section 233.20(a)(2)(iii) provides in pertinent part that: "A State Plan for ... AFDC ... must ... [p]rovide that the standard will be uniformly applied throughout the State...."
 
 
 [8]
 The class consists of:
 All persons who are eligible applicants for or recipients of AFDC in New York State who are treated as members of an assistance unit consisting of either:
 (1) a child or children under the age of 18 and not more than one adult relative (and spouse, if any, of such relative) who is not legally responsible for the financial support of at least one such child; or
 (2) children under the age of 18 if such children are residing with not more than one adult relative (and spouse, if any, of such relative) who is not in receipt of AFDC and is not legally responsible for the financial support of at least one such child[ ] and that child is neither the sibling, half-sibling, or child of any other person in the unit.
 
 
 [9]
 The opinion of the district court repeats the citation to Sec. 233.10(a)(1) but does not cite Sec. 233.20(a)(2)(iii). This appears to be inadvertent. Section 233.20(a)(2)(iii) is the provision that requires uniform statewide application of the AFDC assistance standard. See supra note 7. Further, the remedial order in this case recites both provisions
 
 
 [10]
 Section 602(a) provides in pertinent part:
 A State plan for aid and services to needy families with children must--
 ....
 (38) provide that in making the determination under paragraph (7) [regarding income of dependent child, relatives, and cohabitants to be considered] with respect to a dependent child and applying paragraph (8) [regarding income of dependent child, relatives, and cohabitants to be disregarded], the State agency shall (except as otherwise provided in this part) include--
 (A) any parent of such child, and
 (B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title or in section 607(a) of this title,
 if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family....
 (39) provide that in making the determination under paragraph (7) with respect to a dependent child whose parent is under the age of 18, the State agency shall (except as otherwise provided in this part) include any income of such minor's own parents who are living in the same home as such minor and dependent child, to the same extent that income of a stepparent is included under paragraph (31)....
 
 
 [11]
 The Caretaker Plaintiffs point out that Mary Jo Bane, a former defendant in this case, see supra note 1, is now the Assistant Secretary of HHS responsible for the office that issued Action Transmittal No. ACF-AT-94-6. Because the Action Transmittal essentially reiterates longstanding HEW/HHS policy, we perceive no extraordinary role for Assistant Secretary Bane regarding the policy that it articulates. The timing of its issuance may be another matter
 
 
 [12]
 Section 233.10(a)(1), upon which both the district court, see Bray I at * 8; supra note 9, and the Caretaker Plaintiffs rely, is arguably inapplicable to this case. By its terms, Sec. 233.10(a)(1) is directed to a state plan's "eligibility conditions." See supra note 7. The Policy does not affect eligibility for AFDC benefits; it simply requires grouping of certain eligible AFDC beneficiaries into a single assistance unit for purposes of budgeting. See supra note 3. Cases that have invalidated state regulations on the basis of Sec. 233.10(a)(1) typically involve regulations that more directly affect eligibility for benefits. See, e.g., Blum v. Bacon, 457 U.S. 132, 145-46, 102 S.Ct. 2355, 2363-64, 72 L.Ed.2d 728 (1982) (New York regulation that prohibited cash grants of emergency assistance to AFDC recipients, or emergency assistance in any form to replace lost or stolen public assistance grant, including AFDC grant, held invalid under Sec. 233.10(a)(1)); cf. Lukhard v. Reed, 481 U.S. 368, 381, 107 S.Ct. 1807, 1815, 95 L.Ed.2d 328 (1987) (Virginia regulation that treated personal injury awards as income not invalid under Sec. 233.10(a)(1))